**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**
**PITTSBURGH DIVISION**

| | |
|---|---|
| JOE PENSKA, Individually and For Others Similarly Situated, | Case No. _____ |
| Plaintiff, | JURY TRIAL DEMANDED |
| v. | COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b) |
| HONOR RESOURCES COMPANY, | CLASS ACTION PURSUANT TO FED. R. CIV. P. 23 |
| Defendant. | |

**ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT**

SUMMARY

1.      Joe Penska (Penska) brings this lawsuit to recover unpaid overtime wages and other damages from Defendant Honor Resources Company (Honor) under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, and the Pennsylvania Minimum Wage Act (PMWA), *see* 43 P.S. § 33.104 *et seq.*

2.      Penska worked for Honor as a Senior Right of Way Agent.[1]

3.      Penska and the Putative Class Members (as defined below) regularly worked more than 40 hours a week.

4.      But these workers never received overtime for hours worked in excess of 40 hours in a single workweek.

5.      Instead of receiving overtime as required by the FLSA and PMWA, Honor classified Penska and the Putative Class Members as independent contractors and paid them a flat amount for each day worked (a "day rate") without overtime compensation.

6.      Penska or the Putative Class Members never received a guaranteed salary.

---

[1] Right of Way Agents are also known as Landmen, Land Agents, or Abstractors.

7.      Because Penska or the Putative Class Members were never paid a salary, no white collar exemptions to the FLSA or related state laws apply and the duties Penska or the Putative Class Members are irrelevant to Honor's per se violation of the FLSA and related state laws.

8.      This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

## JURISDICTION & VENUE

9.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

10.     The Court also has supplemental jurisdiction over any state law sub-classes pursuant to 28 U.S.C. § 1367.Venue is proper under 28 U.S.C. § 1391(b)(1) as Honor maintains its headquarters in this District and Division.

11.     Specifically, Honor maintains its headquarters in Cranberry Township, Pennsylvania, and Honor conducts substantial business operations in and around Cranberry Township, Pennsylvania.

## PARTIES

12.     Penska worked for Honor as a Senior Right of Way Agent from approximately April 25, 2018 to November 8, 2018.

13.     Penska worked for Honor throughout Pennsylvania.

14.     Throughout his employment with Honor, Penska was paid a day rate with no overtime compensation and was classified as an independent contractor by Honor.

15.     In fact, Penska's relationship with Honor was an employer/employee relationship.

16.     Penska's written consent is attached as Exhibit 1.

17.     Penska brings this action on behalf of himself and all other similarly situated workers who were classified as independent contractors and paid by Honor's day rate system.

18.     Each of these workers received a flat amount for each day worked and did not receive overtime for hours worked in excess of 40 in a workweek in accordance with the FLSA.

19.     The collective of similarly situated employees or putative class members sought to be certified is defined as follows:

> **All workers employed by, or working on behalf of Honor, who were paid a day rate with no overtime at any time during the past 3 years** (FLSA Class Members).

20.     Plaintiff also seeks class certification of such a class under Fed. R. Civ. P. 23 under the PMWA, as follows:

> **All workers employed by, or working on behalf of Honor in Pennsylvania, who were paid a day rate with no overtime at any time during the past 3 years** (Pennsylvania Class Members).

21.     The FLSA and Pennsylvania Class Members are referred to collectively as the Putative Class Members.

22.     The Putative Class Members are easily ascertainable from Honor's business and personnel records.

23.     Defendant Honor can be served with process by serving its registered agent: **Darryl H. Griwatz, 117 Mulberry Street, Ravenswood, West Virginia 26164.**

COVERAGE UNDER THE FLSA

24.     At all relevant times, Honor has been an employer within the meaning of the Section 3(d) of the FLSA. 29 U.S.C. § 203(d).

25.     At all relevant times, Honor has been an enterprise within the meaning of Section 3(r) of the FLSA. 29 U.S.C. § 203(r).

26.     At all relevant times, Honor has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1). Honor has and has had employees engaged in commerce or in the production of goods for

commerce, or employees handling, selling, or otherwise working on goods or materials – such as tools, cell phones, and personal protective equipment - that have been moved in or produced for commerce.

27.     In each of the last 3 years, Honor has had annual gross volume of sales made or business done at of at least $1,000,000.

28.     At all relevant times, Penska and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

29.     Honor treated Penska and the Putative Class Members as employees and uniformly dictated the pay practices applied to Penska and the Putative Class Members.

30.     Honor's misclassification of Penska and the Putative Class Members as independent contractors does not alter their status as employees for purposes of the FLSA or PMWA.

31.     Honor's uniform day rate scheme, depriving its employees of overtime compensation for weeks in which these workers work over 40 hours is, in of itself, a violation of the FLSA and PMWA. 29 U.S.C. § 207(a) & (e).

### FACTUAL ALLEGATIONS

32.     Honor "provides a professional land services to mineral, telecommunication, real estate, utility, solar, wind, and pipeline companies throughout the Appalachian Basin."[2]

33.     To complete its business objectives, Honor hires personnel, such as Penska, to perform oil and gas land leasing services.

34.     Honor considers Penska and the Putative Class Members to be contractors.

35.     But Honor does not hire these workers on a project-by-project basis.

36.     Rather, Honor hires and treats these workers just like regular, even if sometimes short term, employees.

---

[2] http://www.honorresourcescompany.com/ (last visited March 23, 2020).

37.     Many of these individuals worked for Honor on a day rate basis (without overtime pay).

38.     These day rate workers make up the proposed Putative Class.

39.     For example, Penska worked for Honor as a Senior Right of Way Agent from approximately April 25, 2018 to November 8, 2018 throughout Pennsylvania and West Virginia.

40.     As a Senior Right of Way Agent, Penska's primary job duties include making phone calls to land and mineral rights owners, preparing land leases, submitting documents to his supervisors, and attending meetings.

41.     Throughout his employment with Honor, he was classified as an independent contractor and paid on a day rate basis.

42.     Penska and the Putative Class Members work for Honor under its day rate pay scheme.

43.     For example, Honor paid Penska $350.00 per day he worked.

44.     Penska and the Putative Class Members do not receive a salary.

45.     If Penska and the Putative Class Members did not work, they did not get paid.

46.     Penska and the Putative Class Members receive a day rate.

47.     Penska and the Putative Class Members do not receive overtime pay.

48.     This is despite the fact that Penska and the Putative Class Members often work more than 12 hours a day, for 5 days a week, for weeks at a time.

49.     Although Penska typically worked 5 days a week, for 12 hours a day, he did not receive any overtime pay.

50.     Penska and the Putative Class Members received the day rate regardless of the number of hours they worked, and even if they worked more than 40 hours in a workweek.

51.     Without the job performed by Penska and the Putative Class Members, Honor would not be able to complete its business objectives.

52.     Penska and the Putative Class Members relied on Honor for work and compensation.

53.     Penska and the Putative Class Members worked in accordance with the schedule set by Honor and/or its clients.

54.     Penska and the Putative Class Members cannot subcontract out the work they are assigned by Honor.

55.     Penska and the Putative Class Members must follow Honor and/or its clients' policies and procedures.

56.     Penska and the Putative Class Members' work must adhere to the quality standards put in place by Honor and/or its clients.

57.     Penska and the Putative Class Members did not substantially invest in the tools required to complete the overall job to which they were assigned.

58.     Penska and the Putative Class Members did not market their services while employed by Honor.

59.     Penska and the Putative Class Members worked exclusively for Honor during the relevant period.

60.     Penska and the Putative Class Members did not incur operating expenses like rent, payroll, marketing, and/or insurance.

61.     Honor and/or its clients set Penska and the Putative Class Members' work schedule, which prohibited them from working other jobs for other companies while working on jobs for Honor.

62.     At all relevant times, Honor and/or its clients maintained control, oversight, and direction of Penska and the Putative Class Members, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

63.     Penska's work schedule is typical of the Putative Class Members.

64.     Honor controls Penska and the Putative Class Members' pay.

65.     Likewise, Honor and/or its clients control Penska and the Putative Class Members' work.

66.     Penska and the Putative Class Members' work must adhere to the quality standards put in place by Honor and/or its clients.

67.     Penska and the Putative Class Members are not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties.

68.     Honor knows Penska and the Putative Class Members work for 12 or more hours a day, for 12 days a week.

69.     Honor's records reflect the fact that Penska and the Putative Class Members regularly work far in excess of 40 hours in certain workweeks.

70.     Penska and the Putative Class Members do not receive overtime for hours worked in excess of 40 in any of those weeks.

71.     Instead, Penska and the Putative Class Members are paid on a day rate basis.

72.     Honor controls Penska and the Putative Class Members' opportunities for profit and loss by dictating the days and hours they work and the rates they are paid.

73.     While working for Honor, Honor controlled all the significant or meaningful aspects of the job duties Penska and the Putative Class Members perform.

74.     Honor exercises control over the hours and locations Penska and the Putative Class Members work, the tools and equipment they use, and the rates of pay they receive.

75.     Even when Penska and the Putative Class Members work away from Honor's offices without the constant presence of Honor supervisors, Honor still controls significant aspects of their job activities by enforcing mandatory compliance with its (or its clients') policies and procedures.

76.     Penska and the Putative Class Members do not provide the significant equipment they work with on a daily basis, such as office space, computers, and communication devices.

77.     Honor (and/or its clients) make these large capital investments in buildings, machines, equipment, tools, and supplied the business in which Penska and the Putative Class Members work.

78.     Penska and the Putative Class Members do not incur operating expenses like rent, payroll, marketing, and insurance.

79.     The daily and weekly activities of Penska and the Putative Class Members are routine and largely governed by standardized plans, procedures, and checklists created by Honor.

80.     Honor prohibits Penska and the Putative Class Members from varying their job duties outside of the predetermined parameters and requires Penska and the Putative Class Members to follow Honor's (or its clients') policies, procedures, and directives.

81.     All of the Putative Class Members are subjected to the same or similar policies and procedures which dictate the day-to-day activities they perform.

82.     All of the Putative Class Members work similar hours and are denied overtime as a result of the same illegal pay practice.

83.     All of the Putative Class Members work in excess of 40 hours each week.

84.     Honor uniformly denies Penska and the Putative Class Members overtime for the hours they work in excess of 40 hours in a single workweek.

85.     Penska and the Putative Class Members do not, and have never, received guaranteed weekly compensation irrespective of the day worked (i.e., the only compensation they receive is the day rate they are assigned for all hours worked in a single day or week).

86.     Honor's day rate policy violates the FLSA and PMWA because it deprives Penska and the Putative Class Members of overtime for the hours they work in excess of 40 hours in a single workweek.

87.     Honor knew Penska and the Putative Class Members worked more than 40 hours in a week.

88.     Honor knew, or showed reckless disregard for whether, the Putative Class Members were not exempt from the FLSA and PMWA's overtime provisions.

89.     Nonetheless, Penska and the Putative Class Members were not paid overtime.

90.     Honor knew, or showed reckless disregard for whether, the conduct described in this Complaint violated the FLSA and PMWA.

<strong>CLASS AND COLLECTIVE ACTION ALLEGATIONS</strong>

91.     Penska brings this claim as a class and collective action under the FLSA and PMWA.

92.     The Putative Class Members were victimized by Honor's pattern, practice, and/or policy which is in willful violation of the FLSA.

93.     Other Putative Class Members worked with Penska and indicated they were paid in the same manner (a day rate with no overtime) and performed similar work.

94.     Based on his experiences with Honor, Penska is aware that Honor's illegal practices were imposed on the Putative Class Members.

95.     The Putative Class Members are similarly situated in all relevant respects.

96.     The Putative Class Members are blue-collar workers.

97.     Even if their precise job duties might vary somewhat, these differences do not matter for the purposes of determining their entitlement to overtime.

98.     The illegal day rate policy that Honor imposes on Penska is likewise imposed on all Putative Class Members.

99.     Numerous individuals are victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

100.    The Putative Class Members were or are Honor's employees.

101.    The Putative Class Members worked for Honor in varying states across the United States.

102.     Regardless of the state in which Honor's day rate workers performed work, they were paid a day rate.

103.     The Putative Class Members are similarly denied overtime when they work more than 40 hours per week.

104.     The overtime owed to Penska and the Putative Class Members will be calculated using the same records and using the same formula.

105.     Penska's experiences are therefore typical of the experiences of the Putative Class Members.

106.     The specific job titles or precise job locations of the various members of the Putative Class do not prevent class or collective treatment.

107.     The class is held together by Honor's uniform day rate pay practice.

108.     Penska has no interests contrary to, or in conflict with, the Putative Class Members that would prevent class or collective treatment.

109.     Like each Putative Class Member, Penska has an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

110.     A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

111.     Absent a collective action, many Putative Class Members will not obtain redress of their injuries and Honor will reap the unjust benefits of violating the FLSA.

112.     Further, even if some of the Putative Class Members could afford individual litigation against Honor, it would be unduly burdensome to the judicial system.

113.     Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Putative Class Members, as well as provide judicial consistency.

114.    The questions of law and fact that are common to each Putative Class Member predominate over any questions affecting solely the individual members.

115.    Among the common questions of law and fact are:

    a.   Whether Honor employed the Putative Class Members within the meaning of the FLSA and PMWA;

    b.   Whether Honor's decision to pay a day rate with no overtime compensation to these workers was made in good faith;

    c.   Whether Honor's violation of the FLSA was willful; and

    d.   Whether Honor's illegal pay practice applied to the Putative Class Members.

116.    Penska and the Putative Class Members sustained damages arising out of Honor's illegal and uniform employment policy.

117.    Penska knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

118.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Honor's records, and there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude class or collective treatment.

119.    Honor is liable under the FLSA for failing to pay overtime to Penska and the Putative Class Members.

120.    Consistent with Honor's illegal day rate policy, Penska and the Putative Class Members were not paid the proper premium overtime compensation when they worked more than 40 hours in a workweek.

121.    As part of their regular business practices, Honor intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Penska and the Putative Class Members.

122.    Honor's illegal day rate policy deprived Penska and the Putative Class Members of the premium overtime wages they are owed under federal law.

123.    Honor is aware, or should have been aware, that the FLSA required it to pay Penska and the Putative Class Members overtime premiums for all hours worked in excess of 40 hours per workweek.

124.    There are many similarly situated Putative Class Members who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

125.    This notice should be sent to the Putative Class Members pursuant to 29 U.S.C. § 216(b).

126.    Those similarly situated employees are known to Honor, are readily identifiable, and can be located through Honor's records.

**CAUSE OF ACTION**
**VIOLATION OF THE FLSA**

127.    Penska realleges and incorporates by reference all allegations in preceding paragraphs.

128.    Penska brings his FLSA claim as a collective action under 29 U.S.C. § 216(b).

129.    Honor violated, and is violating, the FLSA by failing to pay Penska and the Putative Class Members overtime.

130.    Honor misclassified the Plaintiff and Putative Class Members for purposes of the FLSA overtime requirements.

131.    Honor misclassified the Plaintiff and Putative Class Members as contractors.

132.    Honor failed to guarantee the Plaintiff and Putative Class Members a salary.

133.    Honor failed to pay the Plaintiff and Putative Class Members overtime.

134.    Honor paid the Plaintiff and Putative Class Members a day rate.

135.    Honor knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay the Putative Class Members overtime compensation.

136.    Honor's failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

137.    Accordingly, Penska and the Putative Class Members are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their rate of pay, plus liquidated damages, attorney's fees and costs.

**CAUSE OF ACTION**
**PMWA VIOLATIONS**

138.    Penska brings his claim under the PMWA as a Rule 23 class action.

139.    The conduct alleged violates the PMWA.

140.    At all relevant times, Honor was subject to the requirements of the PMWA.

141.    At all relevant times, Honor employed Penska and the Pennsylvania Class Members as "employees" within the meaning of the PMWA.

142.    The PMWA requires employers like Defendants to pay employees at 1.5 times their regular rate of pay for hours worked in excess of 40 in any week.

143.    Penska and the Pennsylvania Class Members are entitled to overtime under the PMWA.

144.    Honor has and has had a policy and practice of misclassifying Penska and the Day Rate Workers as independent contractors and failing to pay these workers overtime for hours worked in excess of 40 in a workweek.

145.    Penska and the Pennsylvania Class Members seek unpaid overtime in amount equal to 1.5 times their regular rates of pay for work performed in excess of 40 in a workweek, prejudgment interest, all available penalty wages, and such other legal and equitable relief as the Court deems just and proper.

146.    Penska and the Pennsylvania Class Members also seek recovery of attorneys' fees, costs, and expenses of this action, to be paid by Honor, as provided by the PMWA.

**JURY DEMAND**

147.    Penska demands a trial by jury.

**PRAYER**

WHEREFORE, Penska, individually, and on behalf of the Putative Class Members respectfully requests that this Court grant the following relief:

    a.  An order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) to the Putative Class Members to permit them to join this action by filing a written notice of consent;

    b.  A judgment against Honor awarding Penska and the Putative Members all their unpaid overtime compensation and an additional, equal amount, as liquidated damages;

    c.  Issuance of a declaratory judgment that the practices complained of in this Complaint are unlawful under the FLSA;

    d.  An order awarding attorneys' fees, costs, and expenses;

    e.  Pre- and post-judgment interest at the highest applicable rates; and

    f.  Such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Michael A. Josephson*
    **Michael A. Josephson**
    PA Bar No. 308410
    Texas Bar No. 24014780
    **Andrew W. Dunlap**
    Texas Bar No. 24078444
    **Taylor A. Jones**
    Texas Bar No. 24107823
    **JOSEPHSON DUNLAP**
    11 Greenway Plaza, Suite 3050
    Houston, Texas 77046
    713-352-1100 – Telephone
    713-352-3300 – Facsimile
    mjosephson@mybackwages.com
    adunlap@mybackwages.com
    tjones@mybackwages.com

    **AND**

**Richard J. (Rex) Burch**
TX Bar No. 24001807
**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**AND**

**Joshua P. Geist**
PA ID No. 85745
**GOODRICH & GEIST PC**
3634 California Ave.
Pittsburgh, Pennsylvania 15212
412-766-1455 – Telephone
412-766-0300 – Facsimile
josh@goodrichandgeist.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**